UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                            :

AFL FRESH & FROZEN FRUITS &    :
VEGETABLES, INC.,                               :
                                            :
                Plaintiff,              :
                                            :       06 Civ. 2142 (GEL)
   -against-                       :
                                            :       **OPINION AND ORDER**
DE-MAR FOOD SERVICES INC., a/k/a DE-MAR  :
FOOD SERVICE INC., a/k/a DEMAR FOOD     :
SERVICE and SPERO MENTONIS           :
                                            :
                Defendants.         :
                                            :
------------------------------------------------------------x

Stephen Starr and Vildan Starr, Starr & Starr, PLLC
New York, NY, for plaintiff.

Sam Della Fera, Jr., Trenk, DiPasquale, Webster,
Della Fera & Sodono, P.C., West Orange, NJ, for
defendant.

GERARD E. LYNCH, District Judge:

       AFL Fresh & Frozen Fruits & Vegetables, Inc. ("AFL"), is engaged in the business of buying and selling wholesale quantities of perishable agricultural commodities. De-Mar Food Services Inc. ("De-Mar"), is a former customer of AFL, against whom AFL has brought suit for nonpayment of produce allegedly bought from AFL. AFL has moved for summary judgment against De-Mar and Spero Mentonis, an officer and director of De-Mar, contending that, under the Perishable Agricultural Commodities Act, 7 U.S.C. §§ 499a-499q ("PACA"), both are liable for nonpayment of the goods delivered by AFL to De-Mar. AFL contends that De-Mar is also liable for breach of contract and an account stated, and seeks prejudgment interest and attorney's fees against both defendants.

For the following reasons, summary judgment will be denied as to AFL's PACA claims against defendants, and granted as to its breach of contract, account stated, attorneys' fees, and prejudgment interest claims against De-Mar.

## BACKGROUND

From October 2002 to January 2003, AFL alleges that De-Mar purchased fruits and vegetables from it totaling $62,827, for which it was never paid. (P. Memo 2.) In support, AFL submits 35 invoices detailing the contents of deliveries allegedly from AFL to De-Mar. (Declaration of Ronald A. MacDonald in Support of Motion for Summary Judgment, dated September 20, 2007 ("MacDonald Declaration"), ¶ 9, Ex. 2.) Each delivery, AFL alleges, was signed by an authorized agent of De-Mar on the date of the delivery. (Rule 56.1 Statement, ¶ 4, citing MacDonald Declaration, ¶ 10, Ex. 2.) In early 2003, AFL alleges that it issued, and De-Mar received, an account statement summarizing the invoices reflecting the past deliveries to De-Mar totaling $62,827. (MacDonald Declaration, ¶¶ 11, 12, 14, Ex. B.) AFL further alleges that Spero Mentonis is and was an officer and director of De-Mar Food, and was in a position of control of the alleged trust assets. (Rule 56.1 Statement, ¶¶ 12, 13.)

## DISCUSSION

1. <u>Legal Standards</u>

    A. <u>Summary Judgment</u>

Summary judgment is appropriate where the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon

motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The party moving for summary judgment bears the initial burden of explaining the basis for its motion and identifying those portions of the record which it believes "demonstrate the absence of a genuine issue of material fact." Id. at 323. The burden then shifts to the nonmovant to produce evidence sufficient to create a genuine issue of material fact for trial. Fed. R. Civ. P. 56(e)(2) (When a summary judgment motion is "properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in [Rule 56] – set out specific facts showing a genuine issue for trial."); Matsushita v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under [Rule 56], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."). The Court's responsibility is to determine if there is a genuine issue to be tried, and not to resolve disputed issues of fact. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). The Court must draw all reasonable inferences and resolve all ambiguities in the nonmovant's favor, and construe the facts in the light most favorable to the nonmovant. Id. at 255 ("The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."). However, the "mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient" to withstand a motion for summary judgment. Id. at 252.

B.   Supplemental Jurisdiction

Federal courts have original jurisdiction over questions of federal law. 28 U.S.C. § 1331. District courts also have supplemental jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). "A state law claim forms part of the same controversy if it and the federal claim 'derive from a common nucleus of operative fact.'" Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc., 373 F.3d 296, 308 (2d Cir. 2004), quoting Cicio v. Does, 321 F.3d 83, 97 (2d Cir. 2003), quoting City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 165 (1997), quoting United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966).[1]

C.   PACA

PACA was enacted in 1930 to regulate the interstate sale and marketing of perishable agricultural commodities. Coosemans Specialties, Inc. v. Gargiulo, 485 F.3d 701, 705 (2d Cir. 2007). The statute "provides growers and sellers of agricultural products with 'a self-help tool

---

[1] Federal courts also have original jurisdiction over questions of state law when the dispute is between citizens of different states where the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). The complaint seeks damages in excess of $75,000 and the states that AFL is a New York corporation and De-Mar is a New Jersey corporation. (Compl. ¶¶ 4, 5, 6, 30.) However, the complaint does not establish Mentonis's citizenship or De-Mar's principal place of business. A corporation is a citizen both of the state where it is incorporated and the state where it has its principle place of business. 28 U.S.C. § 1332(c)(1). AFL therefore has not met its burden of demonstrating complete diversity between itself and the defendants. Willis v. Westin Hotel Co., 651 F. Supp. 598, 601 (S.D.N.Y. 1986) (The party "seeking to invoke this court's subject matter jurisdiction under 28 U.S.C. Section 1332" has the "burden of proving that complete diversity of citizenship exists between the parties" which is "a state of affairs where all plaintiffs are citizens of different states from all defendants.") (citations omitted). Therefore, for purposes of this motion, jurisdiction over AFL's state-law claims must be predicated on supplemental jurisdiction.

enabling them to protect themselves against the abnormal risk of losses resulting from slow-pay and no-pay practices by buyers or receivers of fruits and vegetables.'" Id., quoting D.M. Rothman & Co. v. Korea Commercial Bank of N.Y., 411 F.3d 90, 93 (2d Cir. 2005). Under PACA, "perishable commodities or proceeds from the sale of those commodities are held in trust by the buyer for the benefit of the unpaid seller until full payment is made." Coosemans Specialties, 485 F.3d at 705. The statute provides, inter alia, that

> Perishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents.

7 U.S.C. § 499e(c)(2). PACA "affords produce sellers a 'highly unusual trust beneficiary status that permits them, in the case of defaults, to trump the buyers' other creditors, including secured ones.'" Coosemans Specialties, 485 F. 3d at 705, quoting Am. Banana Co. v. Republic Nat'l Bank of N.Y., 362 F.3d 33, 38 (2d Cir. 2004).

Perishable agricultural commodities governed by PACA include "[f]resh fruits and fresh vegetables of every kind and character." 7 U.S.C. § 499a(b)(4)(A). Generally speaking, a PACA dealer is a person "engaged in the business of buying or selling [covered agricultural commodities] in wholesale or jobbing quantities . . . in interstate or foreign commerce." 7 U.S.C. § 499a(b)(6). Wholesale or jobbing quantities are "aggregate quantities of all types of produce totaling one ton (2,000 pounds) or more in weight in any day shipped, received, or contracted to be shipped or received." 7 C.F.R. § 46.2. There are three exceptions to the general

5

rule that a person who engages in wholesale or jobbing quantities in interstate commerce is a PACA dealer.  See 7 U.S.C. §§ 499a(b)(6)(A)-(C).  The exception potentially relevant here provides that a person who deals in wholesale or jobbing quantities "solely for sale at retail" shall not be considered a dealer until "the cost of his purchases of perishable agricultural commodities in any calendar year are in excess of §230,000," 7 U.S.C. § 499a(b)(6)(B), or unless he "elect[s] to secure a license under the provisions of section 499c of this title, and in such case and while the license is in effect such person shall be considered as a 'dealer.'"  7 U.S.C. § 499a(b)(6).[2]

Dealers for PACA purposes may be corporate entities, and where individual officers and shareholders of such entities are "in a position to control the assets of the PACA trust and fail[] to preserve them, [such officers and shareholders] may be held personally liable to the trust beneficiaries for breach of fiduciary duty."  Coosemans Specialties, 485 F.3d at 705 (citations omitted).

### D.     Breach of Contract

Under New York law, "'an action for breach of contract requires proof of (1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages.'"First Investors Corp. v. Liberty Mut. Ins. Co., 152 F.3d 162, 168 (2d Cir. 1998),

---

[2] PACA requires that a person must have a "valid and effective [license]" when they "carry on the business of a . . . dealer." 7 U.S.C. § 499c(a).  Any person who operates as a dealer without a licence is subject to a civil penalty of up to $1,000.  Id.  Therefore, any person who is defined as a dealer and does not meet one of the exceptions as provided by clauses (A), (B), and (C) of 7 U.S.C. § 499(b)(6) *must* have a PACA license, and any person who meets the general definition of a PACA dealer but who also meets one of the exceptions as provided by clauses (A), (B), and (C) of 7 U.S.C. § 499(b)(6) *may* have a PACA license.

quoting Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525 (2d Cir. 1994); see also Startech, Inc. v. VSA Arts, 126 F. Supp. 2d 234, 236 (S.D.N.Y. 2000).

Normally, a contract for the sale of $500 or more of goods "is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker." N.Y. UCC § 2-201(1). However, if the contract is "between merchants," an oral contract will be enforceable against a party who receives "within a reasonable time a writing in confirmation of the contract and sufficient against the sender. . . [where] the party receiving it has reason to know its contents," unless that party provides "written notice of objection [to the sender] . . . within ten days after [the writing] is received." N.Y. UCC § 2-201(2).

For purposes of New York's Commercial Code, a merchant is a person "who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction." N.Y. UCC § 2-104(1). A transaction "between merchants" is "any transaction with respect to which both parties are chargeable with the knowledge or skill of merchants." N.Y. UCC § 2-104(3).

### E.     Liability for an Account Stated

An account stated is "'an agreement between parties to an account based upon prior transactions between them with respect to the correctness of the account items and balance due.'" Ryan Graphics, Inc. v. Bailin, 833 N.Y.S.2d 448, 449 (1st Dept. 2007), quoting Jim-Mar Corp. v. Aquatic Const., 600 N.Y.S.2d 790, 791 (3d Dept. 1993). Under New York and federal law "an agreement to pay an indebtedness may be implied if a party receiving a statement

of account keeps it without objecting to it within a reasonable amount of time unless fraud, mistake or other equitable considerations are shown." Lankler Siffert & Wohl, LLP v. Rossi, 287 F. Supp. 2d 398, 407 (S.D.N.Y. 2003), quoting Kramer, Levin, Nessen, Kamin & Frankel v. Aronoff, 638 F. Supp. 714, 719 (S.D.N.Y. 1986).[3]

To establish a claim for an account stated, the plaintiff must put forth proof that defendant received the bill. Morrison Cohen Singer & Weinstein, LLP v. Brophy, 798 N.Y.S.2d 379, 380 (1st Dept. 2005).

II. Legal Standards Applied

    A. Jurisdiction

This Court has original jurisdiction over AFL's PACA claim, because it is a claim arising under federal law. The Court also has supplemental jurisdiction over the state law breach of

---

[3] See also Federal Exp. Corp. v. Federal Jeans, Inc., 788 N.Y.S.2d 113, 113 (1st Dept. 2005) ("Defendant received plaintiff's invoices for services rendered, and retained them without properly objecting in a reasonable amount of time. Failure to pay those invoices entitled plaintiff to judgment on an account stated."); Morrison Cohen Singer & Weinstein, LLP v. Waters, 786 N.Y.S.2d 155, 156 (1st Dept. 2004) ("[P]laintiff's invoices were retained without any objection for a sufficient length of time as a matter of law to establish defendant's liability on the account stated cause of action."); Werner v. Nelkin, 614 N.Y.S.2d 66, 66 (2d Dept. 1994) ("The defendant's receipt and retention of the plaintiff's invoices without objection within a reasonable period of time, gave rise to an actionable account stated entitling the plaintiff to summary judgment in his favor" and defendant's "bald conclusory allegations in opposition were insufficient to defeat a motion for summary judgment.") (citations omitted); Jim-Mar Corp., 600 N.Y.S.2d at 792 (Defendant "impliedly agreed to pay the amount due as reflected in plaintiff's invoice when defendant received and retained it without rejecting it or objecting to it within a reasonable period of time" and defendant's "[s]ilence is deemed acquiescence and warrants enforcement of the implied agreement to pay.") (citations and internal quotation marks omitted); Rosenman Colin Freund Lewis & Cohen v. Neuman, 461 N.Y.S.2d 297, 298-99 (1st Dept. 1983) ("Even if defendant had received plaintiff's accounts and did not expressly assent, but failed to object to them within a reasonable time, he would be bound by them as accounts stated unless fraud, mistake or other equitable considerations were shown.") (citations omitted); Lockwood v. Thorne, 18 N.Y. 285 (1858).

8

contract and account stated claims, because they share with the federal claim the same common nucleus of operative fact. Central to all of AFL's claims against De-Mar and Mentonis are the circumstances that gave rise to the alleged delivery of produce by AFL to De-Mar and nonpayment for that produce.

  B.  <u>Summary Judgment Preliminaries and Rule 56.1 Statement</u>

  In support of its motion and as required by Local Rule 56.1, AFL submitted a statement of the material facts as to which there is no genuine issue to be tried, along with "citation to evidence which would be admissible, set forth as required by Federal Rule of Civil Procedure 56(e)." SDNY Local Rule 56.1(a), (d). In contrast, defendants's Rule 56.1 counterstatement does not include citation to any evidence in the record, let alone evidence that would be admissible, as required by Local Rule 56.1(d). Many of defendants' counterstatements follow one of these variations: (i) "Denied. There is no evidence in the record" regarding plaintiff's corresponding statement of fact (<u>see</u>, <u>e.g.</u>, Counterstatement, ¶ 6), (ii) "Denied. There is insufficient evidence in the record to support this legal conclusion" (<u>see</u>, <u>e.g.</u>, Counterstatement, ¶ 13), or (iii) "Defendants are without sufficient knowledge or information to admit or deny the statement in this paragraph, and therefore leave Plaintiff to its proofs" (<u>see</u>, <u>e.g.</u>, Counterstatement, ¶ 10).

  Defendants' unsupported denials, without more, cannot create disputes of material fact. <u>See</u> Fed. R. Civ. P. 56(e) (When a summary judgment motion is "made and supported by this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading" but must "by affidavits or as otherwise provided . . . set forth specific facts showing that there is a genuine issue for trial."); <u>U.S. Info. Sys., Inc. v. Int'l Broth. of Elec. Workers</u>

9

Local Union No. 3, No. 00 Civ. 4763, 2006 WL 2136249, at *4 (S.D.N.Y. Aug. 1, 2006) ("To the extent the [nonmovant] proclaim[s] factual assertions to be in dispute without identifying evidence in the record, the [nonmovant] thwart[s] the basic purpose of [Local Rule 56.1]."); id. (A tactic where the nonmovant "dispute[s] the factual assertions in the [moving party's] corresponding paragraphs with objections alone" and fails to cite evidence "directly violates" Rule 56.1.). A nonmovant cannot "raise a material issue of fact by denying statements which the moving party contends are undisputed for lack of 'knowledge and information'" in part because "discovery allows the party opposing summary judgment to obtain the facts necessary to determine whether it must admit or deny them." Stepheny v. Brooklyn Hebrew School for Special Children, 356 F. Supp. 2d 248, 255 n.4 (E.D.N.Y. 2005) (applying EDNY Local Rule 56.1, which is identical to SDNY Local Rule 56.1). Discovery closed more than a year ago in this case. Moreover, most of defendants' statements that they are "without sufficient knowledge or information to admit or deny" AFL's statements are patently incredible, as they have to do with issues precisely within defendants' knowledge, such as whether De-Mar received AFL's statement of accounts due (Counterstatement, ¶ 15), whether De-Mar objected or protested the statement of accounts due (Counterstatement, ¶ 16), and whether De-Mar purchased perishable agricultural commodities in excess of $230,000 in calendar year 2002 or 2003 (Counterstatement, ¶ 10).

The movant's statement of material facts "will be deemed to be admitted for the purposes of the motion *unless specifically controverted* by a correspondingly numbered paragraph" in the opposing party's Rule 56.1 statement and "followed by citation to evidence." Rule 56.1(c), (d) (italics modified); see also JSC Foreign Economic Ass'n Technostroyexport v. Int'l Dev. &

Trade Servs., Inc., 386 F. Supp. 2d 461, 467 n.3 (S.D.N.Y. 2005) (Where the nonmovant "cannot take a position on whether to dispute" a statement of the movant, that statement "will be deemed admitted . . . unless specifically controverted.").

Of course, AFL's statements of material fact cannot be accepted unless they too are supported by admissible evidence. See Fed. R. Civ. P. 56(e) (A summary judgment motion must be "made and supported" before the opposing party "must – by affidavits or as otherwise provided . . . – set out specific facts showing a genuine issue for trial."); Giannullo v. City of New York, 322 F.3d 139, 142 (2d Cir. 2003) (unsupported facts in moving party's Local Rule 56.1 statement disregarded); Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 74 (2d Cir. 2001) (Local Rule 56.1 "does not absolve the party seeking summary judgment of the burden of showing that it is entitled to judgment as a matter of law, and a Local Rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported in the record."); accord Wojcik v. 42nd Street Development Project, 386 F. Supp. 2d 442, 448 (S.D.N.Y. 2005).

However, if AFL's allegations are supported by sufficient evidence in the record, because none were specifically contradicted by De-Mar, they will be deemed admitted for the purposes of this motion. See Wojcik, 386 F. Supp. 2d at 448 ("[A]ny fact alleged in defendants' Rule 56.1 statement, supported in fact by the record, and not specifically and expressly contradicted by properly supported allegations in [an affidavit submitted by nonmovant], will be deemed admitted by plaintiff."); Folkes v. N.Y. Coll. of Osteopathic Med. of N.Y. Inst. of Tech., 214 F. Supp. 2d 273, 281 (E.D.N.Y. 2002) (Movant's statements of material facts are deemed admitted where nonmovant failed to controvert material facts set forth therein.); U.S. Info. Sys., 2006 WL 2136249, at *3 ("A non-moving party cannot create a factual dispute merely by denying a

movant party's factual statement; rather, the non-moving party must identify controverting evidence for the court."), citing Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas, No. 04 Civ. 10014, 2006 WL 1493132, at *5 (S.D.N.Y. May 31, 2006), Blackmon v. Unite!, No. 03 Civ. 9214, 2005 WL 2038482, at *2 (S.D.N.Y. Aug. 25, 2005); and Chimarev v. TD Waterhouse Investor Servs., Inc., 280 F. Supp. 2d 208, 223 (S.D.N.Y. 2003).

C. Breach of Contract

Under penalty of perjury, the president of AFL attests that De-Mar placed telephone orders for the purchase of certain produce. (MacDonald Declaration, ¶ 13.) On at least thirty-five separate occasions, AFL delivered produce to De-Mar, and has submitted delivery tickets purportedly signed by agents of De-Mar food acknowledging those deliveries. (Id. at ¶ 7, Ex. 1.) AFL has produced substantial documentary evidence of their business records detailing their delivery tickets, invoices, and account statements. (Id. at ¶ 8, Ex. 1.).

AFL submits uncontradicted evidence sufficient to demonstrate the formation of a contract (or series of contracts) for the sale of produce to De-Mar, and that pursuant to that contract AFL delivered produce to De-Mar and authorized agents of De-Mar signed or otherwise verified the delivery tickets on the days the produce was delivered. AFL issued invoices to De-Mar following delivery of the produce. (MacDonald Declaration, ¶ 9.) Moreover, the record of deliveries to De-Mar demonstrates that De-Mar, like AFL, is a merchant for the purposes of New York's Uniform Commercial Code. Therefore, an oral contract for the delivery and purchase of produce is binding against De-Mar where De-Mar received invoices from AFL, another merchant, following the delivery of tens of thousands of dollars worth of produce and failed to object to the deliveries or invoices, such as was the case here.

To contest AFL's substantial documentary evidence, De-Mar could easily have submitted an affidavit by Spero Mentosis, or another employee of De-Mar, affirming under penalty of perjury that De-Mar never received the produce, that delivery of the produce was refused, that when De-Mar received the invoices it protested the amount stated on the invoice, or that some other factual circumstance prevented the formation of a contract between the parties. However, De-Mar has done none of these things, and it has not provided any evidence to rebut AFL's overwhelming evidence that De-Mar ordered and received produce from AFL and never paid for it.

Not only did De-Mar not provide evidence to contradict AFL's evidence, but also it did not even address AFL's breach of contract argument in its filings opposing summary judgment. AFL has provided substantial evidence, uncontradicted by De-Mar, that a contract was (or series of contracts were) formed between the parties, that AFL performed by delivering almost $63,000 of produce, that De-Mar has not paid for any of the produce since it was delivered in late 2002 to early 2003, and that AFL has been damaged as a result of this nonpayment.

    D.    <u>Account Stated</u>

If for some reason the initial contract or set of contracts were not valid, any reasonable factfinder would be compelled to conclude that an account stated was created. An account stated is an "agreement, based on prior transactions between the parties, that the items of the account are true and that the balance previously arrived at is due and owing by the debtor to the creditor. When the account has thus been assented to, it becomes a new contract." 29 Williston on Contracts, § 73:55 (4th ed. 2003).

AFL submits sufficient evidence to demonstrate that around January 2003, and after delivering $63,000 of produce, it provided De-Mar with an account statement of the total outstanding amount due, and that De-Mar never protested or objected to the account statement. (MacDonald Declaration, ¶¶ 14-15.) Again, De-Mar produces no argument in its papers about AFL's account stated argument, and provides no admissible evidence, such as an affidavit, that calls into question AFL's evidence that De-Mar received the account statement and never objected to the amount stated. Any reasonable factfinder must conclude, based on this record, that an account stated was created for the full amount of the January 2003 statement.

E.  PACA

AFL submits ample evidence that it delivered perishable fruits and vegetables to De-Mar, and defendants' bald assertions to the contrary do not create a triable issue of fact. However, the applicability of PACA as against a particular purchaser depends not only on whether the goods purchased were fruits and vegetables, but whether the purchaser was a "dealer" for the purposes of PACA.[4] To be considered a PACA dealer De-Mar must have met the statutory requirements outlined in § 499a(b)(6). As a threshold matter, De-Mar cannot be considered a PACA dealer unless it deals (or dealt) in "wholesale or jobbing quantities" of produce, id., defined by regulations to be produce totaling one ton or more in weight in any day shipped, received, or contracted to be shipped or received, 7 C.F.R. § 46.2. Even if De-Mar dealt in wholesale or jobbing quantities, if it did so "solely for sale at retail," than it cannot be considered a dealer "until the cost of [its] purchases of perishable agricultural commodities in any calendar year are

---

[4] PACA also applies against commission merchants and brokers, see, e.g., 7 U.S.C. § 499e(c)(2), but AFL only alleges that De-Mar is a dealer.

in excess of $230,000," 7 U.S.C. § 499a(b)(6)(B), or until it secured a license pursuant to § 499c. 7 U.S.C. § 499a(b)(6).

AFL fails to produce sufficient evidence such that any reasonable factfinder would be required to conclude that De-Mar dealt in wholesale or jobbing quantities. AFL's Rule 56.1 statement contains nothing about whether De-Mar engaged in "wholesale or jobbing quantities," and there is no clear evidence that the deliveries by AFL (or anyone else) or shipments to De-Mar exceeded one ton in any one day.[5] AFL also fails to provide any evidence demonstrating that De-Mar held a PACA license, as all dealers must. Therefore, the Court need not address whether De-Mar purchased the produce "solely for sale at retail," 7 U.S.C. § 499a(b)(6)(B), whether De-Mar purchased perishable agricultural commodities in any calendar year in excess of $230,000," id., or whether De-Mar elected to secure a license to be a PACA dealer notwithstanding strictly retail sales and calendar year purchases of less than $230,000, 7 U.S.C. § 499a.[6]

---

[5] Perhaps an expert in the industry or a factfinder could, on the basis of the invoices that AFL provides, determine the wholesale price per pound of the various products sold, and then extrapolate, based on the cost of the invoice, the total poundage any particular delivery. On the basis of the record, a reasonable factfinder might conclude that De-Mar dealt in "wholesale or jobbing quantities." However, even though it may be highly likely that De-Mar dealt in wholesale or jobbing quantities, the record is not so clear as to support a finding of summary judgment on this point.

[6] AFL submits evidence that "De-Mar Food purchased Produce with an invoice value in excess of $230,000 in calendar year 2002 and/or 2003." (MacDonald Declaration, ¶ 12.) The dollar value of De-Mar's purchases is only indirectly relevant to whether it is a PACA "dealer": to be a PACA dealer one must engage in purchasing or selling wholesale quantities of produce as defined in the statute. The $230,000 threshold is relevant only to defeat applicability of an *exception* under which one who deals in wholesale quantities but engages solely in retail sales is not a dealer unless the invoice cost of his purchases reaches $230,000 in a calendar year. Since AFL has not established that De-Mar dealt in wholesale quantities in the first place, and since there is no evidence in the record that De-Mar purchased the produce "solely for sale at retail,"

15

Because the record does not preclude a genuine issue of fact as to whether De-Mar is a PACA dealer, AFL's motion for summary judgment regarding its PACA claims against De-Mar and Mentonis must be denied.[7]

E. Prejudgment Interest and Attorneys' Fees

The delivery invoices that AFL sent to De-Mar stated: "Past due accounts are subject to interest charge of 1-1/2% per month, maximum 18% per annum. Buyer agrees to pay collection costs, including collection agency fees, reasonable attorney fees, and court costs if this account is placed for collection." (passim MacDonald Declaration, Ex. A.) AFL accordingly claims prejudgment interest and attorneys fees. Since there is no evidence that these terms in the AFL invoices were discussed by the parties at the time the goods were ordered, they will be considered additional terms to the contract, which are "to be construed as proposals for addition to the contract." Coosemans Specialties, 485 F.3d at 708, quoting N.Y. U.C.C. § 2-207(2) (internal quotation marks omitted). When the parties are both merchants, additional terms become part of the contract:

---

the exception to the exception is not relevant. It is therefore unnecessary to decide whether the declaration (which defendants offer no evidence to rebut) is intended to mean that De-Mar purchased produce worth more than $230,000 in 2002, in 2003, in each of those years, or in both together, or whether, assuming all other relevant requirements were met, PACA would apply to De-Mar's 2002 purchases if De-Mar never purchased produce in excess of $230,000 until calendar year 2003, or would apply to De-Mar's 2003 purchases if De-Mar only purchased produce in excess of $230,000 in calendar year 2002 and not in 2003.

[7] It should be a simple matter to determine whether De-Mar was a PACA dealer during the relevant periods of time, and may be as simple as determining whether De-Mar had the appropriate PACA license. If AFL's failure to provide in connection with this motion the necessary evidence to establish that De-Mar was a PACA dealer was simply an oversight (or, conversely, if it is clear that De-Mar simply *wasn't* a PACA dealer), then the parties, as well as the Court and the public, would be well served if the parties could resolve this issue with the guidance of this Opinion and without need for a trial.

> unless the party opposing those terms can establish one of three exceptions: '(a) the offer expressly limits acceptance to the terms of the offer; (b) they materially alter it; or (c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.'

Coosemans Specialties, 485 F.3d at 708, quoting N.Y. U.C.C. § 2-207(2). The exception at issue here, as was at issue in Coosemans Specialties, is whether the provisions materially altered the oral contracts for the delivery of produce. The party opposing the inclusion of the additional terms "bears the burden of proving that the [additional] provision[s] in plaintiffs' invoices was a material alteration" to the contract. Coosemans Specialties, 485 F.3d at 708, citing Bayway Ref. Co. v. Oxygenated Mktg. & Trading A.G., 215 F.3d 219, 223 (2d Cir. 2000). Under New York law, a material alteration is one that would "result in *surprise* or *hardship* if incorporated without the express awareness by the other party." Coosemans Specialties, 485 F.3d at 708, quoting Bayway Ref. Co., 215 F.3d at 224, quoting N.Y. U.C.C. § 2-207 cmt. 4 (internal quotation marks omitted). Surprise includes "both the subjective element of what a party actually knew and the objective element of what a party should have known," and to carry the burden of showing surprise "a party must establish that, under the circumstances, it cannot be presumed that a reasonable merchant would have consented to the additional term." Coosemans Specialties, 485 F.3d at 708, quoting Bayway Ref. Co., 215 F.3d at 224 (internal quotation marks omitted).

As with many other issues raised by AFL, defendants do not even address attorneys' fees or prejudgment interest in their briefing, and have not offered any objective or subjective evidence to demonstrate that these additional terms resulted in any surprise or hardship to them. There is thus no evidence in the record to suggest anything but that AFL's invoices created an enforceable contract providing for attorneys' fees and prejudgment interest, and any reasonable

17

factfinder would have to conclude on the basis of this record that the provisions regarding attorneys' fees and prejudgment interest are part of a contract enforceable against De-Mar.[8]

## CONCLUSION

For the foregoing reasons, AFL's motion for summary judgment is granted with respect to its claims of breach of contract, account stated, pre-judgment interest and attorneys' fees against De-Mar, and denied with respect to its PACA claims against De-Mar and Mentonis.

AFL is directed to submit a spreadsheet regarding its calculation of interest, and detailed billing statements of its counsel regarding fees and costs incurred, supported by detailed attorney time and expense records, on or before December 21, 2007. Defendants may submit any opposition on or before January 7, 2008.

SO ORDERED.

Dated: New York, New York
December 7, 2007

GERARD E. LYNCH
United States District Judge

---

[8] In Coosemans Specialties, the Second Circuit held that the officer of the PACA dealer at issue was also personally liable to the PACA plaintiffs because the attorneys' fees were "sums owing in connection with" perishable commodities transactions under PACA and because the officer "was in a position of control over the PACA trust assets." Coosemans Specialties, 485 F.3d at 709. Here, since the Court has denied summary judgment against De-Mar and Mentonis on the PACA trust issue, it cannot hold at this point that Mentonis is personally liable to AFL for attorneys fees and prejudgment interest on the basis that the funds are "sums owing in connection with" a PACA debt.

18